Filing # 67276956 E-Filed 01/30/2018 04:56:48 PM

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

JENNA HOLLAND, AS THE PERSONAL          CASE NO.:
REPRESENTATIVE OF THE ESTATE OF
MARY MOLINA, ON BEHALF OF THE
ESTATE AND ITS LAWFUL SURVIVORS,
TO WIT: JENNA HOLLAND, SURVIVING
MOTHER

     Plaintiff,

vs.

HUNTER DOUGLAS, INC.

     Defendant.

_____/

## COMPLAINT

Plaintiff, JENNA HOLLAND, as the Personal Representative of the Estate of MARY

MOLINA, by and through the undersigned counsel, sues the Defendant, HUNTER DOUGLAS,

INC., and states as follows:

### IDENTIFICATION OF THE PARTIES AND JURISDICTION

1.    This is an action for wrongful death resulting in damages exceeding the

jurisdictional limits of this Court, exclusive of costs, interests and attorney's fees.

2.    Plaintiff, JENNA HOLLAND, is a resident of Broward County, Florida and is the

duly appointed Personal Representative of the Estate of MARY MOLINA. A copy of the Letters

of Administration is attached hereto as Exhibit "A."

3.    At all times material hereto, JENNA HOLLAND was the mother and natural

guardian of MARY MOLINA.

4.    Defendant, HUNTER DOUGLAS, INC. (hereinafter "HUNTER DOUGLAS"),

was and is a foreign corporation authorized to do, and is doing business in the State of Florida.

On May 25, 2016, Defendant, HUNTER DOUGLAS, was in the business of designing, and/or

1

manufacturing, assembling and/or marketing and selling window coverings, including vertical blinds with cords exceeding 7 1/4 in length, like the one which caused the strangulation of the decedent.

## FACTUAL ALLEGATIONS

5.   On May 25, 2016, the minor decedent, MARY MOLINA, a child two years of age, died from strangulation in her home after she got entangled with a blind cord manufactured by Defendant HUNTER DOUGLAS.

6.   Upon information and belief, the cord vertical blind was purchased within Broward County, Florida.

7.   Defendant was aware, and has been aware for some time, of the dangers associated with corded window coverings at least since the 1980's.

8.   Defendant HUNTER DOUGLAS in particular, knew of the danger of accidental strangulation window coverings with cords pose to children younger than five years old. Specifically, as early as 1985 Defendant HUNTER DOUGLAS knew that an average of 10 accidental strangulations of young children was being reported annually to the United States Consumer Product Safety Commission.

9.   By 1991, the number of accidental strangulations of young children annually climbed to more than 20. Notwithstanding the increase of child incidents and death as a result of a well-known hazard and defect of Defendant's HUNTER DOUGLAS's corded vertical blinds, defendant HUNTER DOUGLAS failed to take corrective action.

10.   Over the last 30 years, more than 350 children have been killed on cords from blinds and window coverings, yet Defendant has failed to take corrective action to remove from homes or otherwise correct these dangerous and defective blinds with cords capable of forming

2

loops, and have sold these items to consumers without adequate warning about the dangers associated with their defective product.

11.     The Consumer Product Safety Commission documented that between 1981 and 1995, there were 170 strangulation deaths from both pull-cords and inner cords. The CPSC directly communicated this information to Defendant.

12.     A 1997 Study by the Journal of American Medical Association (JAMA) found that earlier statistics of death from cord strangulation had been under reported by some 49% and JAMA put the number of strangulations between 1981 and 1995 at 359. Most of these deaths involved children three years old and younger. The CPSC communicated this information directly to defendant.

13.     Defendant was further aware that the most common way children were getting strangled by the cords was through sleep or play.

14.     For the last twenty years, Defendants were made aware of the mounting deaths from strangulation of young children from window covering cords. Defendant was specifically made aware from reports from the Consumer Product Safety Commission the public, and from their own industry meetings and conferences. Yet notwithstanding that knowledge, Defendant, failed to take measures to adequately address the deathly hazard that window covering cords posed to young children.

15.     Notwithstanding the well-known dangers that cords in vertical blinds pose to young children, Defendant continued to represent and/warrant to consumers, including the Plaintiff, that the vertical blinds were safe and free from product defects. Defendant continued to sell said defective vertical blinds, concealing their knowledge of such hazards from consumers and others likely to come into contact with said defective products, including the Plaintiff.

## COUNT I
### (Negligence)

Plaintiff realleges each of the foregoing allegations contained in paragraphs 1 through 15 and incorporates them by reference as if fully set forth herein and further alleges as follows:

16.    Defendants voluntary undertook a retrofit/recall between 1994 and 1996, individually and in conjunction with the WINDOW COVERING MANUFACTURERS ASSOCIATON, and WINDOW COVERING SAFETY COUNCIL in order to avoid a mandatory recall by the U.S. Consumer Product Safety Commission.

17.    To assist in the implementation of the voluntary retrofit/recall, Defendant including HUNTER DOUGLAS, and WINDOW COVERING MANUFACTURERS ASSOCIATION created the WINDOW COVERING SAFETY COUNCIL and funded it so that it could provide retrofit kits to past purchasers to purportedly make safer the defective unreasonably dangerous blinds, including vertical blinds with cords greater than 7 ¼ inches in length previously sold to consumers. The WCSC's efforts were allegedly aimed at warning, and informing consumers, of the dangers of strangulation that these blinds with cords posed to infants and young children.

18.    Defendant HUNTER DOUGLAS had a duty to exercise due care in the design, testing, manufacturing, marketing and selling of the vertical blinds with cords in excess of 7 ¼ inches long, so that they would be reasonably safe for their intended use.

19.    Defendant knew or should have known that MARY MOLINA, as a member of the general public, would come into contact with the vertical blind's cords.

20.    Defendant knew or should have known of the danger associated with the looped cords of vertical blinds and that the danger would not be obvious to young children, their parents, or the general public. Yet it was foreseeable to HUNTER DOUGLAS that young children would

4

come into contact with the looped cords of the vertical blinds and they could suffer serious injury or harm, including death by strangulation.

21.     In breach of its duties, Defendant negligently and carelessly committed one or more of the following acts or omissions:

        a.     Negligently designed the vertical blind at issue;

        b.     The vertical blind at issue failed to contain warnings of the dangers associated with cord lengths greater than 7 ¼ inches and the risks of strangulation to young children associated these cords

        c.     Defendant failed to exercise ordinary care in removing known dangers from the vertical blinds with cords exceeding 7 ¼ inches in length.

22.     As a direct and proximate result of one or more of the foregoing unreasonably dangerous conditions, on May 25, 2016, two year old MARY MOLINA died from strangulation by one of the cords of the blind manufactured or designed by Defendant HUNTER DOUGLAS.

23.     As a direct and proximate result of MARY MOLINA's death, the following damages were sustained:

        a.     Loss of net accumulations suffered by the ESTATE;

        b.     Medical and funeral expenses suffered by the ESTATE;

        c.     Loss of support and services suffered by JENNA HOLLAND;

        d.     Mental pain and suffering suffered by JENNA HOOLAND.

WHEREFORE, the Plaintiff, JENNA HOLLAND, as Personal Representative of the Estate of MARY MOLINA, demands judgment against the Defendant, HUNTER DOUGLAS, for these damages and all other damages allowable by law, and demands costs, attorney's fees, interest and a trial by jury.

## COUNT II
### (Breach of Warranty)

Plaintiff incorporates by reference and realleges each of the foregoing allegations contained in paragraphs 1 through 23 as if fully set forth herein and further alleges as follows.

24.     Defendant HUNTER DOUGLAS expressly and impliedly represented and warranted that the blinds with loop cords exceeding 7 ¼ inches in length being sold to the general public were free from defects, child safe, merchantable, and fit for the intended purpose, when they were in fact not.

25.     Plaintiff relied on the express and implied warranties when using the blind in her home.

26.     Contrary to the express and implied warranties, the loop corded blinds were not merchantable at the time of purchase, in that they were defectively designed and not safe for use throughout the household, as warranted. In fact, given their defective nature, they were unsafe for use anywhere small children played or where otherwise present, and thus not suitable for the purpose for which they were made and intended.

27.     Defendant breached its express and implied warranties by selling to the public blinds with serious and inherent defects. Further, Defendant made and/or allowed these warranties to be made with the intent of inducing consumers, like Plaintiff, to purchase and/or continue to use and display in her home loop corded blinds

28.     If Plaintiff had known the true facts about the dangers associated with looped corded blinds, she would have stopped using the vertical blind and would have removed the subject unit from his household.

29.     Defendant's retrofit/corrective action program was designed to hide the fact that its recalled product was known to be inadequate and unsafe, in that it did not correct the defects,

6

was underfunded to affect a meaningful solution, and actually increased the risk of harm by creating a false sense of security.

30.     As a direct and proximate result of Defendant's foregoing breach of express and implied warranties, on May 25, 2016, two year old MARY MOLINA died from strangulation caused by the one of the cords of the vertical blind cords manufactured or designed by Defendant HUNTER DOUGLAS.

31.     As a direct and proximate result of MARY MOLINA's death, the following damages were sustained:

      a.     Loss of net accumulations suffered by the ESTATE;

      b.     Medical and funeral expenses suffered by the ESTATE;

      c.     Loss of support and services suffered by JENNA HOLLAND;

      d.     Mental pain and suffering suffered by JENNA HOOLAND.

WHEREFORE, the Plaintiff, JENNA HOLLAND, as Personal Representative of the Estate of MARY MOLINA, demands judgment against the Defendant, HUNTER DOUGLAS, for these damages and all other damages allowable by law, and demands costs, attorney's fees, interest and a trial by jury.

Dated: January 30, 2018

**THE LAW OFFICES OF**
**BERMAN & BERMAN, P.A.**
*Attorneys for the Plaintiff*
Post Office Box 272789
Boca Raton, Florida 33427
Telephone (561) 826-5200
Facsimile   (561) 826-5201

By: */s/ Courtney S. Clyne*
    Courtney S. Clyne, Esq.
    Florida Bar No.: 111162
    service@thebermanlawgroup.com

7

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY,
FLORIDA

IN RE: THE ESTATE OF:

MARY MOLINA,                               FILE NO.: PRC-17-0002295
          Deceased.                        PROBATE DIVISION
_____/

### LETTERS OF ADMINISTRATION
### (single personal representative)

TO ALL WHOM IT MAY CONCERN

WHEREAS, MARY MOLINA, a resident of BROWARD County, Florida, died on May 25, 2016, owning assets in the State of Florida, and

WHEREAS, JENNA HOLLAND has been appointed personal representative of the estate of the decedent and has performed all acts prerequisite to issuance of Letters of Administration in the estate,

NOW, THEREFORE, I, the undersigned circuit judge, declare JENNA HOLLAND duly qualified under the laws of the State of Florida to act as personal representative of the estate of MARY MOLINA, deceased, with full power to administer the estate according to law; to ask, demand, sue for, recover and receive the property of the decedent; to pay the debts of the decedent as far as the assets of the estate will permit and the law directs; and to make distribution of the estate according to law.

ORDERED on ____JUN 1 3 2017____, 2017.

_____
HONORABLE MARK SPEISER
Circuit Judge

STATE OF FLORIDA
BROWARD COUNTY
I DO HEREBY CERTIFY the within and foregoing is a true
and correct copy of the original as it appears on record
and file in the office of the Circuit Court Clerk of Broward
County, Florida, and that same is in full force and effect.
WITNESS my hand and Official Seal at Fort Lauderdale,
Florida, this the ___ day of _____ A.D. 20___
                                        Brenda D. Forman

EXHIBIT A
                                        Deputy Clerk